Mr. Chief Justice, and may it please the Court, the prevailing party is the party who wins the lawsuit, obtaining a final judgment in its favor, or, at least, a party who obtains a ruling that the defendant is liable on the merits of one or more claims, such as a summary judgment or a judgment as a matter of law. A preliminary injunction is neither a final judgment nor a determination that the defendant is liable on the merits for violating federal law. It is simply a threshold prediction of the likelihood of success, based on a truncated record and an initial, often hasty, assessment of the law that may well prove to be faulty as the case proceeds. It provides no enduring relief. By its nature, it is a temporary procedural order that dissolves upon final judgment. A preliminary injunction, therefore, does not make a plaintiff a prevailing party within the meaning of that legal term of art, and thus, no statutory exception to the default American rule applies. Legal dictionaries at the time Congress enacted Section 1988 defined prevailing party based on whether the party had successfully maintained its claim looking to the end of the suit, not on its degree of success at earlier stages. This Court's precedent similarly provides that liability for fees and liability on the merits go hand in hand. The Court should therefore adopt a bright-line rule serving the critical interest in ready administrability that a preliminary injunction does not make a plaintiff the prevailing party. I look forward to this Court's questions. Can a consent decree or default judgment support a prevailing party? Yes, I think so, Justice Thomas. Under this Court's precedent, the Court held in May that a consent decree qualifies, and it's suggested in Kurt's saying that a default judgment would also qualify, and a default judgment and a consent decree are similar in that they're both situations where the Court has not ruled on the merits, but because the defendant has waived or forfeited a challenge to the merits, the Court nonetheless enters a final judgment in the plaintiff's favor. But I thought your argument hinged on a Court ruling in favor of, on the merits, in favor of the prevailing party. For an interlocutory ruling, that's correct, Justice Thomas, but it's either an interlocutory ruling or a favorable final judgment. If a party has a favorable final judgment, it has won the lawsuit, and thus it falls within the definition of a prevailing party for that reason. What do you do with the formulation by your friend, which is, the question is whether they got as much relief as they needed? I wonder why that doesn't fit under the prevailing party language. In other words, I don't know what that would be, like they want to do a judgment, the parade goes forward, and they haven't gotten a final judgment, but they don't need a final judgment. A couple of responses to that, Mr. Chief Justice. First, it's not sufficient for an interlocutory order, because there's been no determination that the defendant has violated federal law or that the plaintiff's claim actually succeeds on the merits. And second, at least certainly in a situation such as this one, the plaintiffs got what they wanted, but ultimately they got what they wanted because the Virginia legislature repealed the statute. So they didn't ultimately get the relief that they wanted from the court. But they did. They got interim relief. They had their licenses restored, and they had it restored without paying a fee. And they drove around, despite the existence of the statute for, I think, 16 or 18 months, whatever it was. So it was final. It was never reversed, dissolved, or otherwise undone by a final decision, which is all that Sewell said. And we never required a final judgment in at least two cases, Hanoran and Texas State Teachers. We said you can award interim fees. So final judgment has never been required. All that's required is that you get a judgment in your favor or relief in your favor that hasn't been reversed, dissolved, or otherwise undone. A couple of points in response to that, Justice Sotomayor. First, Hanoran did say that an interim fees could be available, but it said only when a party has prevailed on the merits of at least some of his claims, because only in that circumstance has there been a determination of the substantial rights of the parties which Congress concluded was necessary. But I don't know why a preliminary injunction doesn't do that, because under Winter we have recently said that there has to be a finding of a likelihood of success on the merits. So there's been a finding of likely success on the merits, and there's been relief granted. So that's the only thing that's required by law to get that relief. That's winning on the merits of a preliminary injunction. Under Winter, a party does have to show a likelihood of success on the merits, but as the court said in Kamenisch, it's improper to equate a likelihood of success on the merits with actual success on the merits, both because substantively it's simply a lower standard and also significantly because of the procedural differences between a preliminary injunction and an actual determination of the merits. For instance, a court can consider inadmissible evidence at a preliminary injunction. Well, it's true that it's only a likelihood of success, but a likelihood of success is better than an unlikelihood of success, and we have to decide who's going to pay these fees, and these parties, they got the likelihood of success judgment, and they got everything that they wanted in the interim before the legislature asked and acted, and when the legislature did act, I mean, it's almost, this goes back to Justice Thomas's first question, was almost in the nature of a unilateral settlement. It's kind of like a we give up, right? So you have all those things. You have the likelihood of success finding. You have the fact that they get everything that they need and want in the interim period, and then the whole thing is brought to a close by the legislature saying essentially we give up in the same way that it would in a consent decree case, even without the final imprimatur of the court. Put all of that together, I mean, why shouldn't fees go the other way here? I disagree with that, Justice Kagan, for a number of reasons, and first of all, I don't think it's correct to say that if a legislature changes a law when a lawsuit is pending, that's equivalent to a legislature giving up or agreeing to a consent decree. A legislature may choose to change a statute for a number of reasons, including because it concludes that the statute is simply poor policy, and that determination should not make the government subject to an award of attorney's fees. Indeed, an award of... But it's not that determination that's making them subject to the attorney's fees, right? I mean, what's making them subject, I think, is the fact that before that determination in this situation, they presented their arguments to the court as to why they believed that they were entitled to relief, and they received that relief. I mean, you talked about the standard of what is a prevailing party, and you originally asserted that it was a party who wins a lawsuit, but the court has spoken in, I don't know how to pronounce this case, is it Lesamine, that a plaintiff prevails when a court order grants him actual relief on the merits of his claim that materially alters the legal relationships between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff. And like Justice Sotomayor, I don't understand why a preliminary injunction couldn't satisfy that standard. Because a preliminary injunction is not a determination on the merits of the claim. But it is. When you think about the difference between merits determination and non-merits determinations, we're talking about determinations of preliminary threshold issues like jurisdiction. A jurisdictional determination is not a determination on the merits. That's what we've said. But to the extent that under Winter, the preliminary injunction touches on what the court thinks about the merits of the actual legal claim, it is making a determination. Now, it's not a final determination on the merits, but it is a determination on the merits. It touches on the merits, certainly, Justice Jackson, but it's not a determination of the merits. But he got relief based on the court's initial determination on the merits. But the essential purpose of a preliminary injunction is not to provide a remedy for a violation of the law, but to protect the court's ability to grant effective relief at the close of the case. Parade is tomorrow, and what I want to do is I want to be in it, says this group. I need a PI. Certainly, in that circumstance, if a party chose to seek a consolidation of the merits with the preliminary injunction under Rule 65A2, then there would be an actual determination about whether the defendant had or hadn't violated federal law, and that could then qualify. But otherwise, if you imagine in Seoul, for instance, that the plaintiff there had only wanted to hold the one demonstration, then under that theory, the plaintiff would have been the prevailing party. But didn't Seoul leave open that very question? I thought Seoul was about whether parties can be divested of their prevailing party status if eventually it goes on and the court says, no, you did not win. But in the interim, if they win the preliminary injunction, at that moment, they're a prevailing party, and they continue to be unless and until they are reversed, in a sense, by the final judgment. Seoul did leave that question open, Justice Jackson, but it also said that the temporary fleeting relief was insufficient and that enduring relief was necessary. And when that combined with the canon, which holds that that enduring relief has to come from the court, then a preliminary injunction that's dissolved because a case is mooted by a nonjudicial alteration, here the Virginia legislature deciding to repeal the statute does not qualify to make the plaintiff a prevailing party. Suppose that the litigation on the issue of a preliminary injunction is very extensive. Lots and lots of attorney hours are burned up, and at the end of all that, the district court issues a preliminary injunction and makes factual findings that are going to be hard to reverse on appeal, and then the government says, wow, we're facing the potential of a really heavy hit of attorney's fees, so let's just throw in the towel and change the rule, or whatever is being challenged. In a lot of cases, Justice Alito, the case is not going to become moot for a number of reasons, even if the government changes its conduct prospectively. The voluntary cessation of the challenged conduct is not typically going to moot a case under the voluntary cessation exception to mootness, and if the government wants to overcome that, it has to meet a demanding standard, as this court recently held in the Thickery case. In many instances, civil rights suits the plaintiffs can also seek damages, and that is also not going to be mooted by a change in the rule going forward. So a lot of the time, the defendant may well, after a preliminary injunction, if it concludes that further factual development, further legal development is unlikely to change that analysis, the defendant may well then say, well, I'd better settle, or the fees are going to simply keep accruing. But it's not the case that a government can simply decide at any stage of a case that it wants to moot it. Well, didn't the statute render the case moot? The statute did render the case moot. And couldn't a state do that with respect to all kinds of different cases? I mean, we had a case a couple of years ago, New York State gun regulation. You can imagine that sort of thing. It wasn't the case in that that a preliminary injunction was issued, but imagine that it had been. And then New York State changes its gun law, and it leaves everybody kind of high and dry, even though they've won the only thing that's been at issue, and maybe after very extensive litigation, as Justice Alito suggested. A few responses to that, Justice Hagan. First, the legislature's decision to repeal a statute shouldn't be considered a form of gamesmanship. Among other things, the legislature is not the defendant in a civil rights suit. The defendant is an executive official. The legislature is a separate and independent branch of government, and the defendant has no control over whether the legislature decides to act or when the legislature decides to act. In addition, even a legislative change is not always going to moot a case. Indeed, the dissenting justices in the New York rifle case set forth a number of reasons to believe that case as a whole was not moot, including the availability of damages and the fact that the legislative change may not have completely resolved the plaintiff's claims there, even though this court found it more appropriate to remand, given the way the legislative change had changed the questions presented that the court had initially granted. I think the problem that I'm having is with your evading the essence of the question, which is that the money has been spent, and the issue is who bears the cost of that expenditure, and why should it be a plaintiff who has received relief, all the relief that he or she wanted, and is now stuck with paying for that when it was the other side and one of its agents, whether agents or co-legislative body or executive body who gives up and changes the regulation, decides to make a change. Why shouldn't the plaintiff receive some recompense, assuming, by the way, that they have done enough to receive it? I mean, one of the things about prevailing party is that it's not automatically granted. There's discretion in the courts, and the courts decide how much effort you really put into this and adjust the fees according to those factors. A few responses to that, Justice Sotomayor. First, it's not correct to say that the plaintiffs received all the relief they wanted from the court. They received all the relief they wanted from the legislature's repeal of the statute. But we've said that you can get a dollar in nominal damages, so you didn't get all the relief you wanted in the lawsuit, and you're still a prevailing party. So when I use the word all, I mean all that they wanted in this particular proceeding is preliminary injunction. They wanted their license back, and they wanted to keep driving their cars without paying a fee to do that. And they got that pending the litigation. Fundamentally, it is a problem with the nature of the relief rather than the amount of the relief, and the problem is simply that there's been no actual determination on the merits, and there's been no determination. But you started by answering Justice Thomas by saying default judgments and consent degrees are not determinations on the merits. So that, we have already said, is not necessary. It's not necessary in the context of a final judgment, Justice Sotomayor. But as Hanrahan says, in the context of an interlocutory order, a party must have prevailed on the merits of at least one of his claims, and a preliminary injunction is not that because it requires no determination that the defendant has violated federal law. Thank you, counsel. Just briefly, is your position, does it encourage wasteful litigation? In other words, if you get your preliminary injunction, but you have a lot of attorney's fees, don't you have an incentive to go forward for a permanent injunction, even though, I don't know if they'd be mootness issues or standing issues, but isn't that a bad consequence of the position you're advocating? Ultimately, Mr. Chief Justice, I think petitioner's rule is the more judicially efficient one. Respondent's rule will create a number of perverse incentives, including incentives on defendants to avoid mootness by freezing challenge rules in place. And while it's true that petitioner's rule may lead plaintiffs to try and avoid mootness, if a defendant concludes that further factual or legal development is unlikely to lead to a change in the preliminary injunction analysis, the defendant's going to have a very strong incentive to settle after the preliminary injunction, so it doesn't continue to accrue the fees. Thank you. Justice Thomas? Justice Alito? If there is very strong evidence that the government changed the law primarily to avoid the payment of fees, could a court, as a matter of equity, award fees? Under a bad faith theory, I think if it was a change, a legislative change, again, that's not the defendant, and it usually hasn't been attributed to the defendant. If you're talking about, say, a city changing its ordinance when the city is the defendant and the court concludes it's done in bad faith, then perhaps that equitable exception aside from the statutory exception could apply. One other question. As I understand it, your position is that a prevailing party must obtain a conclusive ruling on the merits or a final judgment in its favor. What is the difference between those two categories? In most cases, there won't be a difference between those two categories, but a difference can arise particularly in complex remedial disputes, and Bradley, which is discussed in Hanrahan, is a good example of this. Bradley was a school desegregation case, and in the time the court awarded interim fees, there had been a determination that the defendant had violated the 14th Amendment and a permanent injunction had been entered, but the court had actually retained jurisdiction for further proceedings to see if modifications could be necessary after it saw how the permanent injunction operated in practice. Thank you. Justice Sotomayor, any further? Justice Gorsuch? One question about your answer to Justice Alito. What would be the basis for that equitable jurisdiction? I mean, I understood your position to be formalist and kind of focusing on the language of the statute and the two definitions that you just offered kind of go to that formal definition of conclusiveness and that there might be reasons why we treat a consent decree as the equivalent, but where does this equitable authority come to? It seems like it pretty significantly undercuts your argument. It would not be a fee award under Section 1988 at that point, Justice Barrett, but as discussed in Alyeska Pipeline, prior to the enactment of the fee-shifting statutes, there were common law, very limited common law grounds for fee-shifting recognized, one of which was a party acting in bad faith. I read your brief as asking for categorical preclusion. In other words, you're saying PIs can never as opposed to sometimes. Is that right? That is correct, Justice Jackson. Even though has any court ever held that? I thought all the courts said maybe, sometimes. The Fourth Circuit rule prior to this case was a bright line rule. But then they changed it. But then they changed it. For those of us who think about legislative history, what do you do with the fact that in Hanrahan we said that the legislative history demonstrates that a plaintiff may sometimes prevail without having obtained a favorable final judgment, and we were looking at the House report that seemed to say that. We agree under our rule that a final judgment is not always going to be necessary under the statute, but there has to be a determination of liability on the merits on at least one claim. And that may not be a final judgment, for instance, in a case where liability proceedings have been bifurcated. Right, but I think in this report they weren't comparing final judgments to these other scenarios. They were saying you could do it as an interim matter. So the House seemed to contemplate that you could have interlocutory prevailing party status. Well, Hanrahan notes that the legislative history discusses interim fees with regards to two cases, one of which was Bradley, which I discussed, and the other of which was Mills, which involved this court holding that partial summary judgment on liability should have been granted in the plaintiff's favor. So I don't think that the legislative – You don't think it counts. Okay. Thanks. Thank you. Mr. Yang? Mr. Chief Justice, and may it please the Court, prevailing party is a longstanding term of art that means the party for whom judgment is entered, which turns on whether at the end of the suit the plaintiff has successfully maintained at least one claim for relief. This Court has repeatedly determined that liability on the merits and liability for fees go hand in hand, such that the plaintiff must obtain at least some relief on the merits of his claim to be a prevailing party. A preliminary injunction reflects a preliminary determination, not a final determination, that rests on a finding of a likelihood of success on the merits, not actual success on those merits. Soll v. Weiner thus determined that a preliminary injunction's tentative character makes a fee request at that initial stage premature. And after that, in this case, the case became moot due to legislative action that Buchanan teaches does not confer prevailing party status. Now, while a plaintiff whose case is dismissed might not lose on the merits, Section 1988 does not award fees to non-losing parties. It requires prevailing party status. I welcome the Court's questions. Do you think that the statutes in which Congress requires that there be a final order before you can have a prevailing party, do you think that's just simply superfluous? No, no, I don't. There's only one statute, by the way, that predates Section 1988 and Section 1617, which is discussed by the Court in Bradley. All that does is clarifies that you don't need a true final judgment to end the case. A final judgment normally is one that resolves all claims and ceases, that it terminates the case. In the context of Section 1617, that's in the context of school desegregation injunctive orders. And in that context, you often will have a final order, which is a, you know, even if it doesn't resolve all claims, but it's final, it's on the merits, you're granting relief on the merits, but the injunction may need to be tweaked as we go along, because just any kind of complicated institutional injunction is going to have to be tweaked. That's all Section 1617 requires. It does not depart, it does not change the normal understanding of prevailing party, which a prevailing party is one who succeeds at the end of the case because they obtain judgment on at least one claim. If I understand it, you don't have to get final judgment on all the claims, right? You just prevail on one. Now, if you prevail on one, can you get the attorney fees that are associated with two, three, and four? No. There's multiple questions in attorney fee cases. The first is whether you're a prevailing party. You have to succeed on at least one claim on the merits. The question then goes to how much fees. Usually it's a reasonable fee award, and the reasonableness of the fees, you would look more granularly to determine whether the issues were intertwined or not. If they're completely separate issues and you lost them, generally, no, you don't get fees for those. What do you do with the case that Justice Jackson posed, which is common, I want to participate in this protest, this parade, and only the passage of time moots the case? You've gotten all your relief. Nothing you've done or someone else has done has changed it. You've got all the relief you really wanted. I wanted to protest. Well, you did not get relief on the merits. We keep going back to the operative question here, which is we've repeatedly said you don't need a final judgment. You don't need a determination of the merits. You can have a consent judgment. You can have this. There has to be a different sense. I don't think that's quite right. The legislative history says you don't need a final judgment following a full trial on the merits. That means you can get a final judgment at an earlier stage, through summary judgment before you go to trial, through, for instance, That's not a final judgment. Yes, summary judgment is a final judgment. Not until you appeal it, not until the whole case is litigated. You get a judgment, but not a final judgment. If the court grants summary judgment, it is a final judgment if it's on all the claims. If it's summary judgment on part of the claims, then it's subject to revision, so it's not truly final. If it's injunctive and you grant summary judgment and then award injunctive relief, well, that's final, because you're actually awarding merits relief at that point. For example, in Chief Justice's hypothetical, after the parade, I could ask for a trial on the merits in accompanying the PI, and a final judgment could be issued at that time. That happens all the time. It happens, but sometimes it doesn't. Sometimes it doesn't, because I might want to go ahead and litigate it, because I'm concerned about the same thing in the future. I might want, for example, a declaratory judgment. Or the parade may be annual. I want a prospective injunction going forward, and then we would have a final judgment on the merits, or at least that claim on which you would be prevailing. Correct.  And I also want to address just a more general point, which is some of the questions are like, well, their fees have been incurred. We've got to allocate them. You know, who do we allocate them to? Well, that's answered by the American rule. The American rule is each party, win or lose, bears their own fees. And this Court has made clear that you need to express statutory authority to depart from that rule. And you think that's the statute we're talking about here? Yes. Yes, the statute uses a term of art that's existed in statute since at least 1853. Right, but it is addressing, it is trying Congress to give us an exception to the American rule. And the question is, what is the scope of that exception? But Congress didn't go all the way. Congress adopted a term of art which had a federal fee in it. Can I just ask about Justice Gorsuch's example? What if I don't want to spend the time and additional money to litigate this through to a declaratory judgment or a future? What if I just want to march in the parade tomorrow? I'm a religious organization, for example. I don't, you know, I agree with traditional marriage. And tomorrow is the LGBTQ parade, and I want to march in it. I want to be able to be there. I'm not making a whole thing out of it. I get that. I go to court, and I argue the merit of my entitlement to be able to do that. And the court says, as a preliminary matter, we don't have a whole trial yet. I think you are going to win. So I'm giving you an injunction, and you get to march in the parade. And I do. And then I'm done. I say the case is mooted because really the relief that I wanted was the ability to march in the parade tomorrow. But I did have to pay an attorney to be able to convince you, court, to give me the relief that I requested. I guess I don't understand why, under our formulation of the test for prevailing party in the Le Femmine case, what we say is that. That was a permanent injunction. I understand it was a permanent injunction in that case. But I'm asking you, we set up a test for when you are a prevailing party, and the question is why doesn't that test also cover preliminary injunctions like the one that I talked about? Part of the test is the judgment on the merits. And a preliminary injunction is a tentative determination that does not control anything later in the suit. It's only for the P.I. states, only to adjust the party's relationships during the suit. Ms. Maile said that she didn't know of a circuit that had accepted this categorical position. If it's a preliminary injunction, there are no fees. Do you know of any circuit that's accepted this categorical position? Well, that was the fifth rule prior to it being changed. So now there's a uniform rule. You don't know of anything, any court that's gone the other way. And you know what? Well, it's an interesting thing. It seems that this comes up all the time. And it seems as though it's come up frequently in just in recent years. When I was talking to my clerks about this, you know, And they asked for injunctions from various kinds of COVID policies. And then, you know, in the end, those policies were changed or were scrapped or were abandoned in some way. So it seems as though there's quite a lot of recent law that cuts against you here from circuits like pretty much all across the U.S. Well, the circuits are not uniform. Some of them look to, for instance, the Fifth Circuit looks to why the mooting event occurred. But my point, I want to make two points. One, this Court already addressed the strategic mootness question in Buchanan and addressed that in four different factors. There's two other factors. I want to address two of those first and then I'll go to Buchanan. One is that Congress has struck a balance here. That there is reason for caution before abandoning what this Court has described as the crucial connection between liability for a violation of federal law on the merits, finding on the merits you violated federal law and attorney's fees. There's reason to pause before doing that. Congress has sometimes been more generous with the government. But this statute covers both private individuals and non-federal actors. Secondly, going to Buchanan, there's a cost of deterring federal government action from being voluntarily changed when it may be lawful. Litigation often puts a spotlight on a practice that might not be the best policy, even though it's lawful. And the Court in Buchanan recognized there's a cost to deterring that kind of good government change. I don't think that that's what I was asking about. I was asking really, do you have any law out there on your side? We have a term of art that has gone back. And this Court's decisions. And I think that the courts of appeals just have not been faithful to this Court. Well, that raises the question for me. Why do you think they've been not seeing the light? Well, I think sometimes there's, as a policy matter, you might decide, hey, you know, I don't like this outcome. I think some of the courts, and I acknowledge that there might be some cases like that. But that type of policy call is for Congress to make. So in Buchanan, when the Court rejected the catalyst theory, Justice Ginsburg dissented and said, hey, look, there's one specific area that's really problematic, FOIA. Congress reacted and did a targeted response to FOIA. This really goes to the appropriate separation of powers here. Congress adopts a statute that has a term of art that goes back quite some time. This Court has repeatedly determined that merits determination, you know, determination of liability on the merits is crucial to then making the defendant liable for fees. Thank you, Counsel. Justice Thomas, anything further? Justice Alito? The respondents argue that there is a historical background of venerable, equitable tradition of awarding interim costs, including for a preliminary injunction. And that, if accepted, would perhaps undercut your historical argument. Do you want to say something about that? There's two points I'd love to make about that. First, this Court already resolved that argument in Aliesta Pipeline. And it was actually Justice Marshall's dissent, which is based on equitable principles. But what the Court decided in Aliesta Pipeline is that the American rule is each party bears its own cost. There are certain discrete common law exceptions that have evolved at equity. For instance, the common fund exception, you get a fund, it would unjustly enrich the people who benefit unless they pay your fees. That's a fee sharing, not fee shifting. Bad faith attorney's fees is another one. Contempt fees is another exception. But the Court did not say equity, you know, whatever you think is equitable. The Court recognized that there are very discrete limits. And I think that's illustrated by the only case that they cite as supporting a PI fee award, and that's Clancy v. Gebb. In that case, it was not based on a temporary injunction that was issued on the day the suit was filed. The Court said it was based on the trial on the merits that sustained the cause of action for an injunction. Now, after the trial on the merits, the Court didn't grant further injunctive relief, and that might be a problem. But it certainly does not stand for the proposition that a TRO or a PI gets you prevailing party status. There was a final adjudication on the merits of the cause of action. Thank you. Justice Sotomayor? Just to be clear, Buchanan, there was no court-ordered relief whatsoever, correct? That's true. And as I read the decision, that was mostly the focus of the decision. Well, certainly, the catalyst theory was – but the catalyst theory does not – we're not escaping the catalyst theory here, because the catalyst theory is embedded in this case. It is the second – it is what happened with this case after – But you're claiming there is no catalyst theory because you're saying the legislature acted – or the other side is saying it acted independently. So it has nothing to do – they're saying it doesn't matter why the case ends. It just ended with a judgment dismissal of the action. It could be for mootness. It could be because the other side gave up. I got what I came for, at least in part. I got my license back. I drove for 16 months. I didn't have to pay anybody to get my license back. I won because of that part of my relief. And it's never been dissolved, reversed. But that's not what the term prevailing party has been understood, either by this court or by the dictionary definitions that date back from before the 20th century. That has required a final adjudication. That's the problem. No, it's never required a final adjudication. It's required a judgment, but not a final one. Well, it has. I mean, even the legislative history – this court in Hanrahan discussed the legislative history. It's all in dicta, but it discussed the legislative history of Section 1988. And what the conclusion the court drew was that interim fees, meaning before the case is finally over, only were available only when the party has prevailed on the merits of at least some of its claims. And that happens when you get a final determination, maybe not a final judgment because you're not resolving all claims, or maybe because there's some ongoing litigation about the nature of the injunction. Thank you, Mr. Yang. We have a difference of opinion in what finality means. If all you're seeking is a preliminary injunction, that's final for that purpose. You don't file suits for preliminary injunctions. You file suits for equitable relief at judgment at the end of the suit. A preliminary injunction is a preliminary matter that protects the parties while the suit is adjudicated. Thank you. Justice Kagan? Justice Gorsuch? Let's see if I've got it. So a PI can't be the basis for an award of fees under this statute because Sol basically says you have to look at what happens afterwards. And for all the reasons you just gave, a PI is a PI. It's preliminary. It's not – okay, all right, fine. Now, so we have to look at what happened afterwards. And here what happened afterwards is plaintiffs may well have convinced the Virginia State Legislature to change their mind in a catalyst sort of way. The problem is Buchanan says that doesn't work either.  All right, but Justice Ginsburg in Buchanan says, hey, Congress should fix that. And Congress did fix it in FOIA and said involuntary cessation and changes, you still get fees. So long as it's not an insubstantial claim. So quite generous, with the government's money, of course. You know, it's quite different when we're talking about private litigants and nonfederal. I think Congress might be more reticent to creating such a generous departure from even the prevailing party standard, but it could. It could. It could. And it hasn't here. No. End of case. That's your theory. That's our theory. All right, got it. Justice Kavanaugh? I think when the red light went on, you were in the middle of a really brilliant answer about Buchanan. And you want to finish that? Like a preliminary injunction, it was fleeting. And I'm not sure that I recall the brilliance. Well, I will look at the transcript and fill it in. Well, you know, I was just going to try to talk about strategic mootness maybe a little bit. Maybe that's where we were going. Sure. Strategic mootness, as my colleague has already answered, you've got voluntary cessation barrier, which, you know, in your decision at Bickering, Justice Gorsuch, it's a pretty formidable burden. I hope so. It's a formidable burden. Damages awards, never going to moot out. And it's entirely speculative what effect this is going to have. That's what Buchanan said. It's not speculative whether it's going to deter counsel or not. And I think this illustrates that. There's no data to show this. This case was started when Smith was the rule. They had no reason to expect any attorney's fees from a PI, but they took the case. So it's a little hard to say, like, there's this compelling case that, like, we're going to have a crash in civil rights, et cetera. And there's a real cost, again, to determining, to deterring the government from changing courts when that action might be lawful but bad policy. Okay. That's good enough. Thank you. Justice Barrett? Justice Jackson? So here's the problem that I'm having with your statement of the case as you summarized with Justice Gorsuch. It's that it begins with Sol says that a PI doesn't count because you have to look at what happens afterwards. I'm reading from Sol. We express no view on whether in the absence of a final decision on the merits of a claim for permanent relief, success in gaining a preliminary injunction may sometimes warrant an award of counsel fees. So I don't know how you can start your case with the premise that Sol stands for the proposition that if you win a preliminary injunction, you have to get to final judgment in order to be entitled to counsel fees. It's true that the court reserved that. But the court also did say that it recognized that preliminary injunction was just the initial salvo. As I stated in my intro, it's the tentative character makes a fee request at that initial stage premature. It did not say premature. It says Weiner is not a prevailing party, we conclude, for her initial victory was ephemeral. And it was ephemeral in that case because it happened to go on and get reversed. It's on page 84 of the court's opinion. The tentative character would have made the fee request at this initial stage premature. The tentative character would have made, yes, but it also says we express no view as to whether or not that tentative character in PI is enough to make you a prevailing party. Agreed, but I think it goes halfway there, and Buchanan closes the door on that. Thank you.  Thank you, counsel. Thank you. Mr. Schmalzbach. Mr. Chief Justice, and may it please the court, the winner of an unreversed favorable judgment and tangible relief from the court is a prevailing party under Section 1988. That is the test, which we agree with the United States that that is an appropriate test. It is most consistent with the statutory text, context, and precedent. And under that test, the winner of an unrepudiated preliminary injunction can qualify as a prevailing party. This court should affirm for three reasons. First is the text. We do encourage the court to consult those contemporaneous legal dictionaries, which do say that the party in whose favor a judgment is awarded is a prevailing party. It does not require a final judgment. And, Your Honors, if you consult the statutes that were in effect right before Section 1988 was enacted, that includes 20 U.S.C. Section 1617, which did require a final order, not merely a naked prevailing party. And my friend on the other side said that was the only such statute. It was not. The legislative history of Section 1988 also references the Communications Act of 1934, which requires not just a prevailing party, but a party that finally prevails. Congress knew how to require that sort of finality when it wanted to in fee-shifting statutes. It did not do it in Section 1988. Second, precedent. Under this court's precedent, the touchstone of prevailing party status is the material alteration of the legal relationship between the parties. Justice Thomas, to your question, why is a consent decree enough to make you a prevailing party, Buchanan answers that question. And Buchanan says that what makes the winner of a consent decree a prevailing party is that consent decree accomplishes that material alteration, just like a preliminary injunction can. Buchanan does clarify that the prevailing party has to be one who is, quote, awarded some relief by the court. That is exactly what a preliminary injunction can do, and that is exactly what our preliminary injunction did here. It forced the commissioner at gavel point to provide the relief that we requested. Third, Mr. Chief Justice, to your point, petitioner's solution when injunctions become moot is unworkable because it would force parties to slog in the many cases where no damages are at issue, all the way through trial, solely for the purpose of winning nominal damages. But when plaintiffs have already won the injunctive relief worth fighting about, courts shouldn't have to referee such fights over farthings. Well, it does seem to me that the courts then have to figure out, if prevailing is not going to mean final judgment on the merits for at least one claim, then it must be a pretty ambiguous thing. What constitutes prevailing? Now, you say, well, in a preliminary injunction case where there's nothing going on beyond the time when the preliminary injunction does its work, maybe that's easy. But there are all sorts of other ways. If prevailing doesn't mean you actually have to win, I mean, what falls short of that? I agree that those cases where a preliminary injunction provides 100 percent of the relief that you went to court to get, those are easy cases. But the only difference between a case like that and a case like this is that we were awarded only some of the relief that we went to court to get. But under Garland, that doesn't matter. Garland doesn't require that we win everything the way a parade preliminary injunction might. It only requires that you win some of the benefits sought that drew you to court in the first place. I'm sorry. I don't want to interrupt you. Please, Justice Kagan. Yes and no. I mean, you know, let me give you a hypothetical, and let's take it out of this state context. Let's just say there are two neighbors. And one of them is pouring pollutants into a stream that goes onto the other neighbor's property, right? And so the injured neighbor sues, and he sues for a permanent injunction, but first he sues for a preliminary injunction. And a preliminary injunction is gotten. And for the next three years, while the court decides the case, he has a very valuable thing, which is the neighbor has not been able to pour pollutants into his stream anymore, right? But then the court changes its mind, and the court says, we're not going to grant the permanent injunction, right? And the plaintiff says, well, I got something really significant. I got three years' worth of a preliminary injunction, and that was fantastic. So I should get fees for that the same way I get fees for winning one claim out of three, right? Does he get fees? Not if he's lost on the merits. No. So that's Sewell, right? That's Sewell. And even though, like Sewell does say, I mean, I take the point that Sewell reserved this question, but Sewell does sort of say you can split things up by claims, but we're not so keen on splitting things up temporarily. Like if you've lost the permanent injunction, the fact that you've gotten three years of excellent relief, it's just not going to get you any fees at all, right? That's right. Okay. Now let's say there is no permanent injunction because the neighbor dies or, you know, the stream goes dry, all right? And so all that's left is the preliminary injunction. The court could have done the same thing, you know, if it had gotten to the permanent injunction, which is to say no, but something just sort of fortuitous has happened to stop the case. Why does the analysis change? Because that plaintiff has gotten the relief that he went to court to get, Your Honor, and this connects to Justice Alito's question about the penalty. Well, he hasn't because he did go to courts to get the permanent thing. I mean, the preliminary injunction was a kind of way station on the way to getting the permanent thing, but what he really wanted, this is not the single parade, right? What he really wanted was for that stream, those pollutants, never to bother him. And essentially what Sol says is because you didn't get that, you don't get that way station relief, right? And so I'm just sort of suggesting to take out the final determination and just say we never get to the final determination because of some fortuity. Why does all of a sudden he get the award for the way station? Your Honor, what Sol suggests is that it is losing that judicial imprimatur from the preliminary injunction that caught in the final order that causes the plaintiff to lose that prevailing party status. And so in Sol, you actually have a loser on the merits. And what Sol says is that preliminary injunction is superseded. The legal and factual foundation of it has been destroyed by the final order. But that's not the case if the case just becomes moot. Nothing about that preliminary injunction has been superseded. It hasn't been rejected on the merits. It remains in effect except insofar as no— How is that? I mean, the river runs dry. I came to court on Justice Kagan's hypothetical to seek an order against my neighbor to stop him from doing things. And I got a preliminary injunction, but then the river ran dry. And so the court dismissed it as moot. Now, the court has not adjudicated in a final way anybody's rights with respect to anything. And I didn't get the relief I came to court seeking. It was denied to me in the end in the final judgment. And we normally think of all preliminary orders in a case as merging into and superseded by the final judgment. And I think that's what Sol is driving at, too. So help me out. I'm stuck where Justice Kagan is. So, Your Honor, you have not lost the foundation of that order. It's just not needed anymore. That's the distinction that Sol draws in reserving the question whether this case, where it becomes moot, in reserving that question, Sol says, what is important is that the foundation, the legal and factual foundation of the preliminary injunction is destroyed in the case where you lose on the merits. But in a case where the court doesn't need and, indeed, under Article III, cannot award any further relief, there's no holding that that preliminary injunction was improperly granted. And no holding that it was proper. It's just gone. It's moot. So while it's in effect, it grants all that relief that was needed at the time. It grants all the relief that you came to receive. And then at the end, it disappears. It's withdrawn. It's moot. It's gone. So, yes, for a period of time, after the three weeks when he was still alive and the river was still running, I had my nice order against him. And it made me happy. But at the end of the day, when we think about prevailing parties, you know, all the dictionary definitions are when the matter is finally set at rest, when the decision or verdict is rendered and the judgment entered. And the judgment and the hypothetical here is there's no case. So, Your Honor, two things. One, we are still prevailing when the matter is set at rest. We have not been told that we are not entitled to relief. We're just told that we don't need more relief. But I would also encourage you to look at those related statutes that were in effect when Congress drafted Section 1988, which shows that when Congress wants to have a statute that requires you to get all the way to that final order, to that finally prevailing status, it knows how to do it. But Congress pointedly did not do that. We also have after Buchanan a pretty pointed example of them saying just the opposite, right, that if we're going to depart from the American rule and allow attorney's fees, and, you know, one can be a fan of the American rule or not, and it doesn't really matter. But there it is. Congress spoke very clearly after Buchanan to vindicate what Justice Ginsburg thought was appropriate in the FOIA context against the federal government. And as the federal government points out, might we expect Congress to be at least as clear when it's authorizing fees against other parties, including states? So, Justice Gorsuch, what Buchanan did is not what we are doing here. I want to be very clear. We reject the catalyst theory. What makes us a prevailing party is that a court gave us the relief that we sought. Yes, but we've just been through that. Yes, it granted you relief, but it could go away. And under Seoul, you could lose it and still not be entitled to fees. So we have to look at not just what happened with the P.I., but what happened after. And I guess that is, you know, it's pretty hard to say that your argument really isn't a catalyst theory. But I take your point. Counsel, I'd like to talk about the prevailing party for a minute. I mean, when you get a P.I., you're not the prevailing party. The court has made a predictive judgment that you'll probably be the prevailing party. You know, and some circuits are still using the sliding scale. You know, you can't disregard the merits under Winters. But, you know, you might have gotten the preliminary injunction because the equities were really strong because maybe the pollution is running onto your property. And I mean, I have not been a district judge, but as someone who has dealt with our emergency docket, you know, you are making those kinds of preliminary judgments in a very compressed time frame. And it's like a 51 percent, like as you showed a reasonable likelihood of success. Why is that prevailing? Because the district court has made that judgment on a P.I. Your Honor, because what this court has said is that it is the relief that you earn that makes you prevailing or not. It is specifically not prevailing on the merits. That was the legal proposition that Maher Begani considered and rejected. You do not have to have full litigation of the issues. You do not have to have a judicial determination that one party's rights have been violated. And everything turns on your answer to Justice Gorsuch. You know, Justice Gorsuch was pressing you and saying, but that's not the relief that you're seeking because you're really seeking a preliminary injunction. So if I disagree with you about that, then that means that you lose because the preliminary injunction is not the relief that you were seeking. It's like a weigh station. It's a Band-Aid. It's something like on the way to what you really want. Your Honor, the relief that we were seeking was an order compelling the commissioner to remove the statutory suspension from our client's driver's licenses. And that is what we won. And it remained in effect for 16 months. And the commissioner was never told that he could re-suspend their licenses under that statute. Couldn't you have asked under Rule 65 to speed that up? We could have asked, Your Honor, but our clients had the relief at that point that they came to court to get. And Rule 65 isn't a cure-all for this problem. That will require fuller proceedings, which we were trying to get the court to undertake, but. Did you have a motion? Sorry, just one last question. Did you have a motion for summary judgment pending? I just don't know the answer to that. Yes, Your Honor. Both sides had fully briefed motions for summary judgment pending, which the commissioner asked the district court not to resolve, rather to stay the case so that it would become moot once the legislation was passed. That was the point. You did ask for it to be speeded up. And the petitioners asked them to wait for the legislature to act. That's exactly right, Justice Sotomayor. I don't know why asking them to speed it up and have more process is the solution in an attorney's fees case. I mean, aren't you incurring more fees if we're going to have additional process? It just seems odd to me that we'd be in a world in which to avoid having attorney's fees on the lesser victory, we are encouraging additional litigation. I think that's exactly right, Justice Jackson. And it goes to the Chief Justice's question about what sort of litigation incentives this is going to create. I don't think we should assume that state and local defendants are like gamblers on tilt who are going to be committed to litigating a case all the way through when a district court has already told them, you are likely to lose on the merits. We give them the presumption of regularity, and that's inconsistent with assuming that they're going to behave in that irrational way. Suppose you had requested nominal damages, then what would have happened? Your Honor, our nominal damages request would have been thrown out of court because the defendant has sovereign immunity even from nominal damages claims. So that's not a solution to this problem of avoiding mootness when there's a state defendant. When there's not a state defendant and the party has a claim for nominal damages, but what it really wants is a preliminary injunction. It gets a preliminary injunction, and then the case is litigated on the issue of whether the party is entitled to nominal damages, and at that point the court changes its mind and says, My interpretation of the law was incorrect when I issued the preliminary injunction. Then what happens? Your Honor, at that point we would be the loser. We would not be the prevailing party, and the judicial inframata underlying the order that gave us the relief for driver's licenses, that would be dissolved at that point because we had been declared the loser on the merits. Do you think your client under those circumstances would be very depressed? Well, I got the preliminary injunction, but what I really wanted was a dollar in nominal damages. Your Honor, whether they're depressed or not, what's important is that up to that point they had gotten the relief that they needed to that point. Can you address the idea that the American rule should be a firm background principle and we should require Congress to speak especially clearly when it wants to deviate from that, and including the scope of how much Congress wants to deviate? Well, Your Honor, I was with you until you got to the scope, because I agree the American rule is the background rule, but once Congress has put into place this prevailing party rule, that changes the background rule, and what this court has done in the past— Why is that? Lots of times we will say with background principles of statutory interpretation, to the extent, not just any deviation, so why couldn't you here, too, say to the extent Congress is deviating from the American rule, the background American rule, it needs to be clear? So, two things, Justice Kavanaugh. One is that that is not what this court has said. So, for example, Garland says that our test for prevailing party, we're going to use a generous formulation. We're going to look to any material alteration of the relationship. That's inconsistent with saying we're going to construe the American rule in a stingy way as to the statute. But also, I think it's strange as a matter of divining congressional intent to look to a statute where Congress says we reject the American rule in this context, and then to say, well, but we'll still construe it narrowly, because that must have been what Congress had in mind. That's not a faithful way of implementing that. And then, relatedly, I guess, what about the separation of powers principle that Justice Gorsuch referred to and Mr. Yang referred to, which is we should really leave—when there's doubt, we should leave this to Congress to fix this. In part, the Court of Appeals story, while helpful to you in some respects, I think it's unhelpful in the respect there are all sorts of different tests out there because they're just completely at sea in trying to figure out how to handle this. Do you just want to respond to that argument? I think they're more similar than they are different, Your Honor. Each of them rejects the categorical rule that the petitioner proposes here. And so one of the important results of that unanimous rejection is that we do know what the world looks like where preliminary injunction winners can be recognized as prevailing parties. If it were an endless parade of horribles, we would have seen that in the briefs, in the amicus briefs, and we have a trickle of things that they don't like. We don't have that parade of horribles. But I also want to point out, back to Justice Alito's question about the equitable background, the equitable background is not just some anything-goes rule. The equitable background, as Wright-Miller discusses in Section 2665, is actually the rule in Rule 54D, that the prevailing party is presumptively entitled to shifting subject to the district court's discretion not to shift fees. And what Wright-Miller says is that is the equitable rule. And the equitable rule, of course, recognizes that winning interim relief can make you a prevailing party. So it would be odd to look at a statute that plugs right into Rule 54D, which was in existence when Section 1988 was enacted, and say, we're not going to use the equitable rule that underlies this statute that we're plugging into and said we're going to do something else. The equitable background confirms the rule that all of the courts of appeals have adopted insofar as they recognize preliminary injunction winners as prevailing parties. What if you get a preliminary injunction and under your rule you get attorney's fees? But then the case continues on and you lose. You don't get a permanent injunction. Do you have to give back the attorney's fees? Your Honor, what Sol says is that attorney's fees should not be awarded at that preliminary stage. Sol does say that we would wait until the end of the case to award those fees. And that makes sense because a preliminary injunction may, as in Sol, be undercut by the final judgment that rejects the premise of that preliminary injunction. Well, if that's the case, doesn't that undermine your argument? In other words, it's a recognition that, of course, the preliminary injunction is not final, and therefore the award of attorney's fees shouldn't be final. No, Your Honor, because our argument is that that finality is not required. We don't require finality the way we would in the Communications Act of 1934. We don't require the sort of finality that was required in the statute at issue in Bradley. So when the legislative history is addressing Bradley, it's addressing a very different statute that does require this sort of finality. So when the statute says prevailing party, it's really saying including temporarily prevailing party. Your Honor, I would say it means prevailing party. And when Congress doesn't want the full scope of prevailing parties to be entitled to fees, as it did in Section 1617, then it knows how to say so. It knows how to require a sort of finality. Is another way to address the Chief Justice's question, that what we're looking for is whether you are entitled to prevailing party status and that you can be deemed a prevailing party in your view based on a preliminary injunction when you can. Maybe sometimes you can't. You're not saying you always are. You're just saying reject the statement that you can never be. So sometimes a preliminary win can confer prevailing party status. But the actual award of the fees that you would get happens when the case is over. At the end of the day, then the court goes back and we look how much attorney's time was put into it. As Justice Sotomayor points out, was it a reasonable fee request for that work that went into the P.I.? That's just right, Justice Jackson. And you can be divested. The reason why you wait until the end in part is because even though you might have had prevailing party status in our view, your view early on as a result of the P.I., if the case continues and it's reversed, the judgment on the merit that made you a prevailing party to begin with, then at the end of the day when we're doing the calculation, we say, nope, you don't get prevailing party status at that point. That's right, Justice Jackson. You can be divested if you win a preliminary injunction but lose on final judgment. You can be divested if you win partial summary judgment, which my friends on the other side suggest is sufficient for prevailing. And your argument is that if it's mooted, if nothing else happens, you retain your prevailing party status on the basis of that win. That's right, because the premise of your win has not been undermined. But, Justice Jackson, you can also lose prevailing party status if you have a final judgment and you lose on appeal. It's the sort of thing that can be divested. We've talked about preliminary injunction as a way in which you may be a prevailing party even though you're not final. But what about a discovery dispute? What about the case turns on whether you can get access to particular documents and you win on that? You don't get a preliminary injunction. Enemies don't get a final injunction. But you won. You got the documents. And then the case goes away, whatever, for whatever reason. Could you be awarded fees on that? You won a very significant motion. No, Mr. Chief Justice, because what this Court has said in describing what counts as a material alteration is it has to be winning the sort of relief that you went to court to get. You wanted those documents. That was the whole reason. I mean, obviously, it's not a statute that says you have a right to these documents, whatever the statute is. But the key to your win was access to those documents. But getting those documents, in any case I can think of, doesn't change the legal relationship between the parties outside of court. And so a good example of something that's not the sort of relief you went to court to get, consider Shohei Otani's 50-50 home run ball. There's an ownership dispute over it. One side files a lawsuit. The plaintiff says, I want a preliminary injunction to prevent you from selling that ball, from auctioning it off, until this ownership dispute is hammered out. So winning that preliminary injunction is not the relief sought in the complaint, which is a declaration of ownership and the return of possession. It's just something that will allow the court to award relief later. That is not enough for prevailing party status in the same way that your hypothetical is not. And, of course, that's why you're saying sometimes a PI may not confer prevailing party status. That's an example. That's an example. That's right, Your Honor. So your position is simply PI. It's either going to be a permanent injunction or it's going to be a preliminary injunction. And those are the only two things that could entitle you to attorney's fees. Those two things would entitle you to attorney's fees, subject to meeting the other requirements of the material. Any other type of relief doesn't count as prevailing. Your Honor, I go back to the same question of whether the order has provided, has created, a material alteration between the parties. Well, in one case, I guess I still don't understand the answer. The material alteration in my hypothetical is you have access to the documents. That's a material alteration. But that doesn't entitle you to attorney's fees. So if the lawsuit is about ownership, possession of those documents, if you've sued for a return of possession. No, no, it's not. But that's going to determine the case. It's a very important piece of evidence for whatever the underlying litigation is about. And the court rules you can get the documents. And then, for whatever reason, the case goes away. You don't get a preliminary injunction. You don't get a permanent one. You don't really need it. You wanted to make these documents public, the Pentagon Papers or whatever. Does that entitle you to attorney's fees? No, Your Honor. That's equivalent to the grant of a motion for new trial, which this court has said, doesn't create that real-world material change in the legal relationship between the parties. That's just addressing in-court conduct that's not going to grant the relief ultimately sought in the complaint. That's the key, is the relief ultimately sought. Counselor, you keep coming to the material alteration of the parties' relationship in responding to the Chief Justice and others. I would have thought that that was exactly the argument made in Seoul and in our hypothetical that Justice Kagan and I discussed. For a period of time, there was a material alteration in the relationship between the parties. But that's not enough. It's got to be a final. When the matter comes to rest, that's the implication of a prevailing party as traditionally understood. It's the one who wins in the end, not temporarily. So are you really just asking, are you fighting with Seoul, which says even a material alteration temporarily that is subsequently withdrawn doesn't count, right? No, Your Honor. We're not fighting with Seoul. So it can't be just a material alteration. There has to be something more. And why isn't that something more, the final judgment? What Seoul says is the foundation of that preliminary injunction has to be unreversed. That foundation can't be superseded by a legal order. So we do have to look at the end of the case and see what the court said at the end of the case, right? In the same way that we would with a permanent injunction. We have to see, is that permanent injunction rejected on a motion for reconsideration? And see at the end of the case what the court said. Forget about what happened in the world. What the court said is moot. I dismiss the case. I provide no relief to anybody. No, Your Honor. What the court said is implicitly is. No, no, no, no, no, no. No implication. I'm looking at the judgment because I'm supposed to look at the judge, the final judgment, prevailing party who wins the end. The court says case dismissed. Your Honor, what a dismissal for mootness means is that there is no more relief that the court can provide. It doesn't mean that the relief it already provided loses its judicial imprimatur. Because at that point, that preliminary injunction order remains good law. It's just that the court can't order any additional relief because there's no need for it. All right. Thank you. What do you do with a dismissal that's muncingware, that vacates the preliminary injunction? So, Your Honor, a muncingware vacater might affect a preliminary injunction in the same way that might affect a final judgment. I don't think muncingware is on the right track for what's going on here. No, there wasn't one here. And so that's my point, which is if a district court is unsure of whether the law is good or should continue the preliminary injunction, it could vacate it. It could, Your Honor. I would suggest that in this case in particular, muncingware would be inappropriate because what United States v. Muncingware itself says is that this is not a remedy for a party that has slept on its rights and failed to take advantage of review where it's available. And that's exactly what happened here, Your Honor. The preliminary injunction that was entered was immediately appealable under Section 1292A. That's why it's a judgment for Rule 54A purposes. And the commissioner chose not to appeal. The commissioner also chose to avoid resolution of its fully briefed pending motion for summary judgment. So this isn't a muncingware case. I'm not saying that. I'm just asking the question, which is if a court doesn't believe that it should continue an injunction, it will vacate it, correct? A preliminary injunction. Yes. And the court could, of course, decide that it's not appropriate to have it for legal or factual reasons. And at that point, you would lose that prevailing party status. When you dismiss a case, the PI disappears. What's the difference? It's merged into the final judgment. Do I need to say I withdraw my PI? No. District judge says case dismissed. Your Honor, because I keep coming back to the touchstone, which is that material alteration. Yes, but we went through that. It has to be at the end of the day, the material alteration. It can't be the temporary one because Seoul tells us it can't be because what happens later matters. And so it has to be material alteration at the end of the case. Do we agree on that much? We do. We do look to the end of the case because you can lose that prevailing party status. But I suggest that it is not the case that a party who has won 100 percent of the relief you went to court to get is not a prevailing party. And that's the implication, is that if you only look to mootness without more and that's the end of the game, then the football coach who has gotten a preliminary injunction, letting him pray at the championship game only, he's the prevailing party under any meaning of that term and should be recognized as such here. Counsel, I see your red light is on. Justice Kavanaugh? Justice Thomas? Just as a recap, what's your definition of prevailing party? It's the winner of a favorable judgment and tangible relief from the court and the unreversed favorable judgment that's never repudiated. So I still don't understand, then, your answer when the neighbor dies. It's still unreversed, right? Yes. And that neighbor has gotten the relief he went to court to get. Not all of it. And to be clear, the fact that you're only a partial winner must be considered when the district court is deciding the amount of reasonable fees. But, yes, as long as you are the winner of the relief you went to court to get and the district court or the court of appeals never says that you're the loser, you're the prevailing party. Is there any other interlocutory relief that could support prevailing party other than preliminary injunction? Your Honor, it's possible if an appealable order, a judgment, such as in rare circumstances stays can be appealable, if they are changing the party's legal relationship in the way that this does. But Congress really did single out preliminary injunctions in Section 1292A for this special treatment because they can have such a big effect on the party's rights. So that is why they are the primary form of relief that the courts of appeals have dealt with. Thank you. Justice Alito? Justice Gorsuch? Thank you, counsel. Thank you. Rebuttal? Thank you, Mr. Chief Justice. I'd like to start with your point that once you depart from a bright-line rule that a final judgment or a conclusive determination on the merits of at least one claim is what's required, then the rule becomes extremely ambiguous as to what could potentially qualify for prevailing party status. A lot of interlocutory orders can be appealable and can be said in some sense to give some benefit to the plaintiff. And yet those orders do not fall within any typical understanding of the legal term of art prevailing party. I think you can also see the ambiguity looking at what is going on now in the circuits. As Justice Kavanaugh put it, the circuits really are at sea on this question. And the sheer number of published court of appeals cases grappling with these scenarios shows that the tasks the circuits have adopted are not readily administrable. They're fact-intensive and unpredictable, and they're frequently sparking a second major litigation over the availability of fees, which in and of itself is highly judicially inefficient. Second, I'd like to discuss Justice Kagan's point that a preliminary injunction is really a way station and not the final destination, not what a party is seeking in bringing suit. And they often occur in a very compressed time frame without full development of the record or the legal argument, such that the final judgment might be different. Of course, the final judgment might not be different, but when that final judgment is never reached, there's no way to tell what the court ultimately would have held on the merits of the claim. And third, I'd just like to agree with Justice Gorsuch's point that the combination of the principles that this court set forth in Soll and Buchanan really do answer this case. Soll provides that the court must look to the end of the case to determine the prevailing party, and Buchanan provides that a nonjudicial alteration, such as a government's decision to change the law, does not make a party the prevailing party. And under those principles, the plaintiffs are not the prevailing party here. Thank you. Thank you, counsel. The case is submitted.